UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-10209-LTS |
| ) | |
| ESOGIE OSAWARU, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Between late 2017 and May 2020, defendant Esogie Osawaru participated in a conspiracy to steal more than $1.3 million from approximately 125 victims. Osawaru's role was to open bank accounts into which victim funds were transferred and quickly withdraw the funds. Osawaru opened at least six bank accounts at five banks using two different fraudulent passports. His victims, who were often elderly, were deprived of thousands of dollars, and in some instances, their life savings. Taking these factors, as well as those identified in the government's separate sealed filing, the government recommends Osawaru be sentenced to 14 months imprisonment, 24 months of supervised release, restitution of $1,340,516.55, and forfeiture in the form of a money judgment for $1,340,516.55.

**Offense Conduct**

Osawaru and his co-conspirators operated what is known as "romance" and "advance fee" scams. A romance scam is a type of fraud in which conspirators create fictitious profiles on online dating or social websites. Conspirators then use these online dating profiles to capitalize on their victims' desire to find companions, gain their trust, and, once that trust is gained, direct victims to transfer money under false pretenses. An advance fee scam is a type of fraud in which

1

a victim believes they are providing money up front in order to obtain a greater amount of money or a service at a later date—which date never comes. Osawaru's role in the scheme was to open bank accounts using fake identity documents to receive victim funds, quickly withdraw funds after victims deposited money into those accounts, and transfer the money to co-conspirators. Between late 2017 and May 2020, Osawaru used at least two fake identities—"Milk Anthony" and "Franklin Edward"—to open six bank accounts at various local banks, including Bank of America, Citizens Bank, Rockland Trust Bank, Santander Bank, and TD Bank. He also used a bank account in his own name to carry out the scheme. More than $1.3 million flowed through these accounts in less than three years.

Among Osawaru's victims is Victim 1, a now 63-year-old woman from Michigan who sent $120,000 to accounts Osawaru and co-conspirators controlled. Victim 1 sent the funds under the belief that they were for a man she met online named "Jamie Gonzalez," who purportedly worked on an oil rig and needed funds for a part for the rig and for his daughter's surgery.

Victim 2, an elderly woman from Alabama, refused to believe the man with whom she was in an online relationship was a scammer, even after her adult children reported the crime and involved Alabama Protective Services. Victim 2 sent approximately $150,000 to accounts Osawaru and his co-conspirators controlled, emptying her 401k retirement account in the process. As a result, according to her children, Victim 2 went bankrupt.

Another victim, Victim 3, is a now 79-year-old widow from Ohio who, shortly after her husband's death, began communicating with a man she met online named "Pedro Brown" who told her he worked for the U.S. military and was stationed in Syria. Victim 3 sent $60,000 to bank accounts Osawaru and co-conspirators controlled under the belief that she needed to buy

out "Brown's" purported contract with the United Nations so that "Brown" could return to the United States to care for Victim 3 following a surgery.

Victim 4, a now 66-year-old woman from Oregon, sent more than $250,000 to Osawaru and his co-conspirators at the direction of a man she met online who asked her for loans. Even after investigators interviewed her and explained the scam, Victim 4 believed she would be paid back, stayed in communication with the man, and refused to provide his name to investigators under the mistaken belief that she needed to protect her online romantic partner. Victim 4 later confirmed she was never paid back.

Another victim, Victim 5, is a now 53-year-old woman living in New York who was in need of immigration assistance. Victim 5 contacted a man, "Peter Loblock," who advertised his immigration services online. Victim 5 thereafter sent "Loblock" her personal documents and records, as well as more than $11,000 in fees for his purported services, some of which was deposited into Osawaru's personal bank account. "Loblock" never provided Victim 5 with any immigration services.

As one more example, Victim 6, a now 79-year-old woman from Puerto Rico, sent more than $70,000 to accounts Osawaru and co-conspirators controlled. Victim 6 sent the funds to a "friend" she had met online and communicated with daily for nearly 2.5 years. This "friend" had told Victim 6 he was in the U.S. army and stationed in a clandestine location, and that he needed the money to free a box of valuable items from customs. Even after being told of the nature of the scheme, Victim 6 believed her "friend" was also a victim, rather than a scammer.

In total, approximately 125 victims transferred money to bank accounts that Osawaru personally controlled.[1]

Separate from the romance scam, Osawaru received unemployment payments from Washington and Pennsylvania in the names of others into accounts in his own name as well as that of his aliases.

**Guideline Calculation**

The parties agree that Osawaru's total offense level under the Sentencing Guidelines is 25. That calculation reflects a base offense level of 7 under Section 2B1.1(a)(1); a 14-level increase under Section 2B1.1(b)(1)(I) because the loss from the offenses was more than $550,000 but not more than $1.5 million; a 2-level increase under Section 2B1.1(b)(2)(A) because the offenses involved 10 or more victims or caused substantial financial hardship to one or more victims; a 2-level increase under Section 2B1.1(b)(11) because the offenses involved the possession or use of an authentication feature; a 1-level increase under Section 2S1.1(b)(2)(A) because Osawaru was convicted under 18 U.S.C. § 1957; a 2-level increase under Section 3A1.1(b)(1) because Osawaru knew or should have known that a victim of the offense was a vulnerable victim; and a 3-level decrease pursuant to Section 3E1.1 for acceptance of responsibility.

The Probation Office has taken the position that Osawaru's total offense level under the Sentencing Guidelines is 24, based on a finding that a base offense level of 6 applies to the money laundering count. As noted in the government's objection to this calculation in the

---

[1] Some of these victims also transferred funds to accounts controlled by other co-conspirators. The government is not seeking to hold Osawaru responsible for additional funds transferred by these victims, or all of the funds flowing through co-conspirators accounts, which total in the millions of dollars, because these additional losses were not necessarily reasonably foreseeable to Osawaru.

Presentence Report, this approach conflates the money laundering offense with the "underlying offense from which the laundered funds were derived"—that is, the mail and wire fraud conspiracy charged in Count One. While the government is recommending a below-Guidelines sentence, the government nevertheless explains its objection here so that the Court can accurately calculate the Guidelines.

    Under Section 2S1.1(a)(1), the base offense level for money laundering is the

> offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined.

The underlying offense from which the laundered funds were derived is the conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. Osawaru committed that offense and has pled guilty to it, and Probation has determined the offense level for that offense: 27. PSR ¶ 39. Under Section 2S1.1(b)(2)(a), one level is added because Osawaru was convicted under 18 U.S.C. § 1957, for an adjusted offense level of 28. After a 3-level reduction for acceptance of responsibility, the total offense level is 25.

    The Probation Office has indicated that, in determining the offense level for the underlying offense to the money laundering conspiracy, it applied a base offense level of 6, rather than 7, under Section 2B1.1 because money laundering is not "an offense referenced to this guideline." As an initial matter, that approach looks at the wrong offense. Section 2S1.1(a)(1) instructs that it is the *underlying* offense that must be considered. The underlying offense here—mail and wire fraud conspiracy—is referenced to Section 2B1.1 and has a statutory maximum term of imprisonment of 20 years or more, and thus the base offense level is 7. *See, e.g.*, PSR ¶ 32.

Just this year, the District of Columbia Circuit considered and rejected the Probation Office's position. *United States v. Otunyo*, 63 F.4th 948, 956 (D.C. Cir. 2023). There, the defendant argued that a base offense level of 6 applied to his money laundering convictions, using the same reasoning as the Probation Office. *See* Brief of Appellant, *United States v. Otunyo*, No. 21-3053 (D.C. Cir. July 15, 2022) at 22-27. The circuit court rejected the defendant's argument and held that the offenses underlying his money laundering convictions—bank fraud—was "*an* offense referenced to this guideline" and had a maximum term of imprisonment of more than 20 years, and thus a base offense level of 7 applied. *Otunyo*, 63 F.4th at 956. The court emphasized that Section 2B1.1(a)(1)(A) does not require that "the" offense of conviction be referenced to the guideline, but rather says "an" offense of conviction. *Id.* at 957. Thus, "if (1) 'any one' of the defendant's convictions is governed by § 2B1.1, and (2) that offense carries a maximum term of 20 or more years, then the base offense is seven." *Id.* Here, one of Osawaru's convictions is governed by Section 2B1.1: the mail and wire fraud conspiracy charged in Count One.

This approach is consistent with First Circuit precedent. *See United States v. Cruzado-Laureano*, 440 F.3d 44, 48 (under Section 2S1.1, "before considering what money-laundering-related adjustments to apply to [defendant's] sentence, the court first had to calculate the sentence as it would have applied to the [underlying] extortion counts *standing alone*") (emphasis added). In contrast, the cases on which the Probation Office relies do not support its position. For example, in *United States v. Hallahan*, 756 F.3d 962 (7th Cir. 2014), the court did not analyze whether the offense was "referenced to this guideline" under Section 2B1.1, nor did it have to: the offense of conviction was a conspiracy under 18 U.S.C. § 371, which carries a five-year maximum sentence. *Id.* at 976, 979 (government conceded the base offense level was

6

six).  The out-of-district decision in *United States v. Zaranek*, 428 F. Supp. 2d 697 (E.D. Mich. 2006), does not hold any precedential value and, in any event, is distinguishable because it relied on the rule of lenity and did not consider the close reading of the text that the *Otunyo* court conducted.  Similarly, the unpublished decision in *United States v. Abdelsalam*, 311 Fed. App'x 832 (6th Cir. 2009), on which the Probation Office and the appellant in *Otunyo* relied, is not precedent and in any event, the *Otunyo* court considered and rejected its reasoning.  Finally, the decisions from other sessions of this court in *United States v. Douglas Hodge, et al.*, No. 19-cr-10080-NMG, and *United States v. Babich, et al.*, No. 16-cr-10343-ADB, did not have the benefit of the *Otunyo* decision when making their rulings.

In sum, a total offense level of 25 and a Criminal History Category of I results in a Guidelines Sentencing Range of 57-71 months.[2]

**Sentencing Recommendation**

The government recommends a sentence of 14 months imprisonment, 24 months of supervised release, restitution of $1,340,516.55, and forfeiture in the form of a money judgment for the same amount.

1. *The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.*

Osawaru's crime was serious and caused significant harm.  He and his co-conspirators capitalized on lonely, often elderly, individuals' desire to find companions, using promises of love to persuade victims to wire large sums of money into accounts that Osawaru and his co-conspirators opened using counterfeit foreign passports.  Once victims wired money to these

---

[2] The government notes that Osawaru would not be eligible for the proposed amendment to the Guidelines providing for a 2-level downward adjustment for zero-point offenders because he personally caused substantial financial hardship.  *See* Proposed Amendments to the Sentencing Guidelines, § 4C1.1(a)(6); *see also* PSR ¶¶ 15-23, 26-27; *contra* PSR ¶ 103a.

7

accounts, Osawaru stood ready to collect, withdrawing the funds within days of deposit. This readiness to withdraw the money so promptly is an indication of the degree of coordination among the members of the conspiracy, which, as noted above, obtained more than a million dollars from victims. Some of these victims depleted their life savings. The losses the fraud caused in such a short period, the number and identity of the victims, and the sophisticated manner in which it was carried out are measures of the seriousness of the offense and counsel in favor of a lengthy term of imprisonment.

Additionally, Osawaru, by his own words, he had a good childhood. PSR ¶ 54. He committed this offense as an adult with a history of employment who had been supporting himself legitimately and was in fact employed and earning an income when he committed this crime and had no need to steal. PSR ¶¶ 73-77. Additional analysis of Osawaru's history and characteristics is presented in the government's separate sealed filing.

2. *The Need for the Sentence Imposed To Promote Respect for the Law and to Provide Just Punishment for the Offense.*

Here, Osawaru's motive was purely personal gain. He understood that his gain in this scheme represented another's loss. He did not act out of coercion, duress, or desperation. His participation was not the result of a momentary lapse in judgment or weakness of will. Rather, he demonstrated a prolonged willingness to engage in an exploitation of victims for the sake of personal profit. For a financial crime, these factors point toward the highest degree of culpability.

3. *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct*

General deterrence is particularly important here. Online scams taking advantage of the lonely and elderly are rampant. *See, e.g.*, Federal Trade Commission, "Romance scammers' favorite lies exposed," Feb. 9, 2023, available at https://www.ftc.gov/news-events/data-

visualizations/data-spotlight/2023/02/romance-scammers-favorite-lies-exposed (reported losses from online romance scams reached "staggering" $1.3 billion across 70,000 victims in 2022).[3] The scam is easy to complete, and the huge amounts of money make it all too attractive to carry out.  Often, those "wooing" the victims are located overseas, out of the reach of the government's jurisdiction.  But, they depend on participants in the United States, like Osawaru, to accomplish the scheme.  His sentence should reflect the need to deter the many others who might otherwise engage in the same sort of misconduct if there is to be any chance of driving down the hundreds of millions of dollars in losses to victims annually.  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool and calculated then sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation omitted).

   4. *The Need to Avoid Unwanted Sentencing Disparities Among Defendants Guilty of Similar Conduct*

A sentence of 14 months is on the lower end of sentences imposed on related defendants, but factors in the reasons outlined in the government's separate sealed filing.  The table below summarizes the sentences similarly situated defendants have received in this district:

---

[3] *See also* Federal Trade Commission, "Reports of romance scams hit record highs in 2021," Feb. 10, 2022, available at https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/02/reports-romance-scams-hit-record-highs-2021 (reported losses reached $547 million in 2021); Federal Trade Commission, "Romance scams take record dollars in 2020," Feb. 10, 2021, available at https://www.ftc.gov/news-events/blogs/data-spotlight/2021/02/romance-scams-take-record-dollars-2020 (reported losses reached $304 million, up 50% from 2019); Federal Trade Commission, "New FTC Data Show Consumers Reported Losing More Than $200 Million to Romance Scams in 2019," Feb. 12, 2020, available at https://www.ftc.gov/news-events/press-releases/2020/02/new-ftc-data-show-consumers-reported-losing-more-200-million (reported losses reached $201 million, up 40% from 2018).

| Case Name | Approx. Loss Caused | Sentence Received | Other Factors |
|---|---|---|---|
| *United States v. Kofi Osei*, No. 21-cr-10064-IT | $4.3 million | 54 months | Recruited at least 4 others to scheme for total losses exceeding $9 million |
| *United States v. Francis Okafor*, No. 22-cr-10095-DPW | $1.1 million | 24 months | Recruited to scheme by Osei; other sentencing factors under seal |
| *United States v. Mark Okuo*, No. 21-cr-10309-LTS | $1 million | 55 months | Obstructed justice after arrest, including by telling witness to lie to law enforcement |
| *United States v. Florence Musau*, No. 21-cr-10190 | $956,000 | 44 months | Also received fraudulent pandemic unemployment assistance |
| *United States v. Mike Amiegbe*, No. 21-cr-10339-IT | $828,000 | 6 months prison and 3 months home confinement | Testified at trial in *United States v. Omoruyi* |
| *United States v. Nosayamen Iyalekhue*, No. 20-cr-10208-RWZ | $813,000 | 63 months | CHC III; also received fraudulent pandemic unemployment assistance |
| *United States v. Macpherson Osemwegie*, No. 21-cr-10219-DJC | $686,000 | 32 months | CHC II; also received fraudulent pandemic unemployment assistance |
| *United States v. Augustine Osemwegie*, No. 22-cr-10081-RWZ | $10,000 | Probation | Did not open bank accounts; rather laundered proceeds by buying cars at auction |

Notably, while the loss Osawaru caused falls toward the high end of these defendants, the government's recommendation is toward the low end of the sentences imposed for the reasons outlined in the government's separate sealed filing.

**Conclusion**

For the reasons herein and in the government's separate sealed filing, the government recommends a sentence of 14 months imprisonment, 24 months of supervised release, restitution of $1,340,516.55, and forfeiture in the form of a money judgment for the same amount.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Kristen A. Kearney*
Kristen A. Kearney
Assistant U.S. Attorney

Dated: September 12, 2023

**CERTIFICATE OF SERVICE**

I, Kristen A. Kearney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: */s/ Kristen A. Kearney*
Kristen A. Kearney